UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

KELLY F.

                         Plaintiff,

        v.                                    5:19-CV-0173 (LEK)

ANDREW SAUL, Commissioner of the
Social Security Administration,[1]

                         Defendant.

---

## MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

This Social Security appeal is before the Court following a decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff benefits. Both parties have filed briefs. Dkt. Nos. 14 ("Plaintiff's Brief"), 18 ("Defendant's Brief").

On appeal, Plaintiff presents three arguments: (1) the Administrative Law Judge ("ALJ") failed to evaluate Plaintiff's IQ scores under Listing 12.05; (2) the ALJ incorrectly concluded that Plaintiff does not suffer from sufficient deficits in adaptive functioning; and (3) the ALJ's decision was not supported by substantial evidence. See generally Pl.'s Br.

For the reasons that follow, the Court reverses the Commissioner's decision and remands solely for calculation and payment of benefits.

### II.    BACKGROUND

#### A.  Procedural History

This case's procedural history is complex. Plaintiff applied for supplemental security

---

[1]  Saul is automatically substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this case. See Fed. R. Civ. P. 25(d).

income ("SSI") benefits on February 18, 2010. See Dkt No. 8 ("Record") at 78–98.[2] The

application was denied on June 11, 2010, see R. at 37, and Plaintiff requested a hearing, id. at

41. On May 25, 2011, ALJ Marie Greener conducted a hearing on Plaintiff's application. See

id. at 385. In an August 23, 2011 decision, ALJ Greener determined that Plaintiff had not been

disabled since the date on which she applied for SSI benefits. See id. at 34. On May 16, 2013,

the SSA notified Plaintiff that this Court had remanded the case for further administrative

action. See id. at 451. On September 26, 2013, ALJ Greener conducted a supplemental hearing.

See id. at 602; Def.'s Br. at 3. On December 12, 2013, ALJ Greener again found that Plaintiff

had not been disabled since the date on which she applied for SSI benefits. See R. at 432; Def.'s

Br. at 3. After Plaintiff appealed, the case was again remanded for further administrative action

on May 12, 2016 by the Hon. David E. Peebles, United States Magistrate Judge. See R. at 646;

see also Finley v. Commissioner of Social Security, No. 15-CV-1155, Dkt. No. 15 (N.D.N.Y.

May 12, 2016). In its February 3, 2017 order of remand (the "2017 Remand Instructions"), the

SSA's Appeals Council instructed the ALJ to "[e]valuate the severity of the claimant's mental

impairments at steps 2 and 3 of the sequential evaluation process, and determine whether they

meet or equal a listing, specifically evaluating the claimant's IQ scores under listing 12.05." R.

at 657.

    On January 29, 2018, ALJ Elizabeth W. Koennecke held another hearing[3]. See R. at

_____

    [2] In its citations to the Record, the Court refers to the page numbers produced by CM/ECF, not the page numbers stamped onto the documents themselves.

    [3] An issue at the hearing apparently resulted in some testimony not being captured on the record. See R. at 1173. Plaintiff was apparently not sworn in on the record as required by the SSA's Hearings, Appeals, and Litigation Law Manual ("SSA Hallex Manual"). See R. at 1180; SSA Hallex Manual at § I-2-6 ("The ALJ will administer all oaths or affirmations *on the record*.")

1171. ALJ Koennecke decided on March 12, 2018 that Plaintiff had not been disabled from the

date on which she applied for SSI benefits through the decision date. See R. at 633–645 (the

"March 2018 Decision"). On January 24, 2019, the SSA's Office of Appellate Operations

denied review of the March 2018 Decision. See R. at 625.

### B. Factual History

Plaintiff, a 53-year-old woman, based her February 18, 2010 application for SSI benefits

on the following disabilities: joint pain; leg weakness; depression; learning disabilities;

headaches; borderline diabetes; metal in her head; acid reflux; and allergies.[4] See R. at 123.

On February 27, 2006, Dr. Stephen Fitzgerald apparently[5] performed a consultative

evaluation of Plaintiff. See Pl.'s Br. at 14. Dr. Fitzgerald found that Plaintiff had a full-scale IQ

score of 58, a non-verbal IQ score of 51, and a verbal IQ score of 69. See id.; see also R. at 656

(Feb. 3, 2017 remand order from the SSA Appeals Council referring to these scores).

On May 17, 2017, Dr. Dennis M. Noia conducted a consultative intelligence evaluation

of Plaintiff. See R. at 702–13 (the "Noia Report"). Dr. Noia found that Plaintiff had a full-scale

IQ of 63, a verbal comprehension score of 66, a perceptual reasoning score of 65, a working

memory score of 69, and a processing speed score of 76. See id. at 710.

---

(emphasis added). Nevertheless, the Court finds Plaintiff has waived any objection. See Donaghy
v. Comm'r of Soc. Sec., No. 11-CV-15581, 2012 U.S. Dist. LEXIS 184040, at *7 (E.D. Mich. Dec.
14, 2012).

[4] Plaintiff's arguments on appeal focus solely on ALJ Koennecke's conclusions regarding
whether she has an intellectual disorder. See generally Pl.'s Br.

[5] Plaintiff refers to the examination by Dr. Fitzgerald but does not provide a citation to a
report.

III.    **LEGAL STANDARD**

When a district court reviews an ALJ's decision, it must determine whether the ALJ

applied the correct legal standards and whether his or her decision is supported by substantial

evidence in the record. See 42 U.S.C. § 405(g). Substantial evidence amounts to "more than a

mere scintilla," and it must reasonably support the decision maker's conclusion. Halloran v.

Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401

(1971)). A court will defer to the ALJ's decision if it is supported by substantial evidence,

"even if [the court] might justifiably have reached a different result upon a *de novo* review."

Sixberry v. Colvin, No. 12-CV-1231, 2013 U.S. Dist. LEXIS 134688, at *3 (N.D.N.Y. Sept. 20,

2013) (quoting Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.

1984)). However, a court should not uphold the ALJ's decision—even when there is substantial

evidence to support it—if it is based on legal error. See Bubnis v. Apfel, 150 F.3d 177, 181 (2d

Cir. 1998).

IV.    **DISCUSSION**

Before addressing Plaintiff's arguments, the Court will provide the administrative

context for this dispute. The SSA uses a multi-step sequential evaluation process in determining

whether a claimant is "disabled." See 20 C.F.R. § 404.1520(a)(4). At step one, the agency

considers the claimant's employment to assess whether she is engaged in "substantial gainful

activity". See id. at § 404.1520(a)(4)(i). At step two, the agency considers the medical severity

of a claimant's impairment. See id. at § 404.1520(a)(4)(ii).

The third step in the SSA's sequential evaluation process is most germane to Plaintiff's

appeal. At that stage, the agency asks whether the claimant has "an impairment(s) that meets or

equals one of our listings in appendix 1 of this subpart and meets the duration requirement[.]"
See id. at § 404.1520(a)(4)(iii). If so, the SSA will find the claimant disabled. See id. "Each
listing contains a statement describing the disorders and certain criteria that must be met in
order for the [SSA] to find that the claimant is disabled." See Davidheiser v. Berryhill, No. 17-
CV-5097, 2018 U.S. Dist. LEXIS 189484, at *8 (E.D. Pa. Nov. 6, 2018).

Plaintiff's argument focuses on whether she meets the requirements contained in Listing
12.05, which pertains to intellectual disorders. As a threshold matter, there is some uncertainty
over which version of Listing 12.05 should guide the Court in its review of the March 2018
Decision. Defendant "contends that the ALJ properly applied the listing criteria that were in
effect at the time of her decision." Def.'s Br. at 8 n.9 (citing Lowry v. Astrue, 474 F. App'x
801, 805 n.2 (2d Cir. 2012) (summary order)). On the other hand, Plaintiff suggests that her IQ
scores would have resulted in a per se finding of disability under an earlier version of Listing
12.05. See Pl.'s Br. at 14 ("These low scores, in and of themselves, would have been met
[under] listing 12.05 (B) as it existed at the time of the scores."), 15 ("A full scale IQ score of
58 and a verbal IQ score of 51 are consistent with totally disabling functional limitations and
would have been under prior regulations disabling in and of themselves.").

The Court agrees with Defendant that the version of Listing 12.05 that was in effect at
the time of the March 2018 Decision should be applied on appeal. See Lowry, 474 F. App'x at
805 n.2 (applying the version of a regulation that was in effect at the time of the ALJ's
adjudication); see also Kiser v. Saul, No. 19-CV-1511, 2020 U.S. App. LEXIS 24085, at *4 n.1
(4th Cir. July 30, 2020) (explaining that "the version of the listings in effect as of the date of the
Commissioner's final decision controls").

5

A claimant can satisfy the requirements of Listing 12.05 by meeting the criteria found in either Paragraph A or Paragraph B. See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05.[6] Paragraph A requires a claimant to show: (1) significantly subaverage general intellectual functioning evident in a cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; (2) significant deficits in adaptive functioning manifested by a dependence upon others for personal needs; and (3) evidence supporting the conclusion that the intellectual disorder began before reaching 22 years of age. See id. at § 12.05(A). Paragraph B requires a claimant to show: (1) significantly subaverage general intellectual functioning, evidenced by either a full-scale IQ score of 70 or below or a full-score IQ score of 71–75 combined with a verbal or performance IQ score of 70 or below; (2) significant deficits in adaptive functioning manifested by either extreme limitation in one area of mental functioning or marked limitation in two areas of mental functioning; and (3) evidence supporting the conclusion that the intellectual disorder began before reaching 22 years of age. See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05(B).

The Court now turns to the arguments presented by Plaintiff on appeal.

---

[6] As noted by Defendant, see Def.'s Br. at 6 n.8, Plaintiff does not specify whether she alleges disability under Paragraph A or Paragraph B of Listing 12.05. However, in the March 2018 Decision, ALJ Koennecke found that the requirements of Listing 12.05(A) were not met. See R. at 644 ("These requirements are not met because the claimant has demonstrated the ability to participate in standardized testing of intellectual functioning (Exhibit C30F)."). Plaintiff does not appear to appeal this portion of the March 2018 Decision. Accordingly, the Court constrains its inquiry to Paragraph B of Listing 12.05, which requires an IQ score at or below certain thresholds. See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05(B)(1).

## A.  Whether ALJ Koennecke Erred in Concluding Plaintiff Lacks Significant Deficits in Adaptive Functioning

Plaintiff argues that ALJ Koennecke erred in concluding that Plaintiff lacks significant deficits in adaptive functioning. See Pl.'s Br. at 16. "Adaptive functioning refers to an individual's '[]ability to cope with the challenges of ordinary everyday life.'" Talavera v. Astrue, 697 F.3d 145, 153 (2d Cir. 2012) (quoting Novy v. Astrue, 497 F.3d 708, 710 (7th Cir. 2007)).

The Court concludes that ALJ Koennecke erred in finding that Plaintiff lacks significant deficits in adaptive functioning.

### 1. ALJ Koennecke's Findings on Plaintiff's Adaptive Functioning

ALJ Koennecke concluded that Plaintiff "does not have significant deficits in adaptive functioning." R. at 638. The SSA uses a five-point scale in assessing mental functioning, determining whether claimants experience no, mild, moderate, marked, or extreme limitations. Listing 12.05(B) requires a claimant to show significant deficits in adaptive functioning, manifested by either extreme limitation in one, or marked limitation in two, of the following areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A § 12.00(E).

On Plaintiff's ability to understand, remember, or apply information, ALJ Koennecke determined Plaintiff experiences a moderate limitation. R. at 638. On Plaintiff's ability to interact with others, ALJ Koennecke determined Plaintiff experiences a mild limitation. Id. On Plaintiff's ability to concentrate, persist, or maintain pace, ALJ Koennecke determined Plaintiff experiences a moderate limitation. Id. at 639. Finally, on Plaintiff's ability to adapt or manage

7

herself, ALJ Koennecke determined Plaintiff experiences a moderate limitation. Id.

Because ALJ Koennecke determined Plaintiff does not have marked limitations in two

areas of functioning or a significant limitation in one area of functioning, ALJ Koennecke found

that Plaintiff did not meet Listing 12.05(B). Id.

> *2. Whether ALJ Koennecke's Findings on Plaintiff's Adaptive Functioning Were*
>
> *Supported by Substantial Evidence*

After carefully reviewing the Record, the Court concludes that substantial evidence does

not support ALJ Koennecke's determination that Plaintiff lacks significant deficits in adaptive

functioning.

First, the March 2018 Decision fails to distinguish between activities Plaintiff is able to

accomplish on her own and activities with which she requires assistance. In reaching her

conclusion without giving due consideration to this distinction, ALJ Koennecke contradicted

SSA guidance. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A § 12.05 ("Our conclusions about

your adaptive functioning rest on whether you do your daily activities *independently*,

appropriately, effectively, and on a sustained basis.") (emphasis added). ALJ Koennecke

reasoned that Plaintiff has only a "moderate limitation" in "understanding, remembering, or

applying information" in part because she "is able to drive occasionally, maintain personal care,

pay bills, shop in stores, spend time with family and attend appointments." R. at 638.[7] However,

---

[7] Even assuming Plaintiff is able to complete these activities, that does not preclude a
finding of disability. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A § 12.05 ("The fact that you
have done, or currently do, some routine activities without help or support does not necessarily
mean that you do not have a mental disorder or that you are not disabled. For example, you may
be able to take care of your personal needs, cook, shop, pay your bills, live by yourself, and drive
a car."); see also Rivera v. Schweiker, 717 F.2d 719, 722 (2d Cir. 1983) ("The claimant need not
demonstrate that he is completely helpless or totally disabled.").

evidence in the Record shows that Plaintiff needs assistance for many of these tasks. See, e.g., R. at 704 (Noia Report notation that Plaintiff self-reported needing assistance to "dress, bathe, and groom"); id. (Noia Report notation that Plaintiff self-reported that she does not manage money); id. (Noia Report notation that Plaintiff can shop "with someone"); id. at 706 (Noia Report conclusion that Plaintiff "may need assistance managing money"); id. at 135 (Plaintiff reports that her children help her with personal care); id. at 152 (Plaintiff reports being unable to shower).

Second, there is no indication that ALJ Koennecke assigned any weight to evidence countering her conclusion that Plaintiff does not experience significant deficits in adaptive functioning. See LaBarge v. Colvin, No. 15-CV-732, 2016 U.S. Dist. LEXIS 133149, at *25 (N.D.N.Y. Sept. 28, 2016) ("This District Court has found that an ALJ's failure to assess evidence contrary to her conclusion that a plaintiff did not have deficits in adaptive functioning in considering Listing 12.05 was error requiring remand."); see also Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir. 1983) ("Although we do not require that, in rejection a claim of disability, an ALJ must reconcile explicitly every conflicting shred of medical testimony . . . we cannot accept an unreasoned rejection of all the medical evidence in a claimant's favor[.]") (citations omitted). For example, ALJ Koennecke wrote that Plaintiff is capable of driving "occasionally" despite evidence that she is not. See R. at 704 (Plaintiff's self-report to Dr. Noia that she does not drive); but see id. at 137 (Plaintiff reports being able to drive "once in a while" but that she gets "confused"). ALJ Koennecke noted that Plaintiff "has never lost a job because of problems getting along with people," id. at 638. However, Plaintiff has held only one job in her life: a two-month stint at a tree farm in 1985. See id. at 124. And though ALJ Koennecke relied heavily on

the Noia Report, the March 2018 Decision fails to acknowledge Dr. Noia's statement that cognitive problems "may occasionally interfere with the claimant's ability to function on a daily basis," id. at 705. See generally March 2018 Decision. Put differently, Dr. Noia was questioning Plaintiff's "ability to cope with the challenges of ordinary everyday life." Talavera, 697 F.3d at 153 (quoting Novy, 497 F.3d at 710).

Plaintiff's adaptive functioning is analogous to that of the claimant in Barton v. Astrue, No. 08-CV-810, 2009 U.S. Dist. LEXIS 117617 (N.D.N.Y. 2009). In Barton, a court in this District found that an ALJ did not have substantial evidence to support the determination that the claimant lacked significant deficits in adaptive functioning. Barton, 2009 U.S. Dist. LEXIS 117616, at *25–26. Like Plaintiff, the Barton claimant did not shop independently but could occasionally prepare meals. See id. at *22. However, the Barton claimant groomed himself, see id. at *22, while Plaintiff requires assistance, see R. at 704.

Because the Court has determined ALJ Koennecke erred in the March 2018 Decision by concluding Plaintiff did not experience significant deficits in adaptive functioning, the Court does not address Plaintiff's arguments aimed at subsequent steps of the SSA's sequential evaluation process. See LaBarge, 2016 U.S. Dist. LEXIS 133149, at *28.

**B. Procedure on Remand**

Plaintiff's claim for disability benefits has been pending for over 10 years. See R. at 78 (application date of February 18, 2010). Because of the long pendency, the Record has been sufficiently developed to lead the Court to conclude that Plaintiff is disabled. The Court therefore reverses and remands solely for the calculation and payment of benefits.

Courts have two options upon determining that the Commissioner's decision was not

supported by substantial evidence. See McClain v. Barnhart, 299 F.Supp.2d 309, 324 (S.D.N.Y. 2004), report and recommendation adopted, 2004 U.S. Dist. LEXIS 1177 (S.D.N.Y. Jan. 28, 2004). If the administrative record contains gaps, the court should remand for further development. See id. (citing Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980)). "If, however, the record provides 'persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose,' the court may reverse and remand solely for the calculation and payment of benefits." See McClain, 299 F.Supp.2d at 324 (quoting Gold v. Sec'y of Health, Education & Welfare, 463 F.2d 38, 44 (2d Cir. 1972)).

The Court's review of the voluminous record in this matter unearthed "persuasive proof of disability," McClain, 299 F. Supp. 2d at 324 (quoting Gold, 463 F.2d at 44). Accordingly, the Court constricts consideration on remand to the benefits calculation.

As discussed, at the third step of the sequential evaluation process, the inquiry is whether the claimant meets the requirements of a listing. If so, the claimant is found to be disabled. See, e.g., LaBarge, 2016 U.S. Dist. LEXIS 133149, at *8.  Listing 12.05(B) requires: (1) significantly subaverage general intellectual functioning, evidenced by either a full-scale IQ score of 70 or below or a full-score IQ score of 71–75 combined with a verbal or performance IQ score of 70 or below; (2) significant deficits in adaptive functioning manifested by either extreme limitation in one area of mental functioning or marked limitation in two areas of mental functioning; and (3) evidence supporting the conclusion that the intellectual disorder began before reaching 22 years of age. See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05(B).

To determine whether the Record indicates "persuasive proof of disability," McClain, 299 F. Supp. 2d at 324 (quoting Gold, 463 F.2d at 44), the Court turns to whether Plaintiff

11

satisfies each of Listing 12.05(B)'s requirements.

*1. Significantly Subaverage General Intellectual Functioning*

The Record clearly shows that Plaintiff experiences significantly subaverage general intellectual functioning. Dr. Noia found that Plaintiff had a full-scale IQ of 63, <u>see</u> R. at 710, below the threshold full-scale score of 70, <u>see</u> 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05(B). Thus, Plaintiff satisfies this Listing 12.05(B) requirement.

*2. Significant Deficits in Adaptive Functioning*

The Court has already concluded ALJ Koennecke lacked substantial evidence for her conclusion that Plaintiff did not have significant deficits in adaptive functioning. Nevertheless, the Court next examines the Record for evidence of significant deficits in adaptive functioning. Specifically, as required by Listing 12.05(B), the Court asks whether Plaintiff has extreme limitations in one, or marked limitations in two, of the four areas of adaptive functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05(B).

a.  <u>Understanding, Remembering, or Applying Information</u>

The Court concludes that Plaintiff has, at minimum, a marked limitation[8] in the area of understanding, remembering, or applying information. "This area of mental functioning refers to the abilities to learn, recall, and use information to perform work activities." <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(G).

---

[8]  A marked limitation means "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)(d).

The Record is replete with examples of Plaintiff struggling to follow instructions and complete tasks. Plaintiff does not participate in hobbies because she becomes "so confused," R. at 138. She becomes "mixed up" when counting change. Id. She needs assistance getting dressed. See R. at 1181; cf. Barnes v. Barnhart, 116 Fed. Appx. 934, 940–41 (10th Cir. 2004) (reversing ALJ's finding of no disability because the record did not indicate the claimant dressed herself, among other reasons). Plaintiff relies heavily on her daughter to complete household tasks. See R. at 1182; cf. Beam v. Comm'r of the SSA, No. 17-CV-372, 2019 U.S. Dist. LEXIS 159220, at *23 (S.D. Ohio, Sept. 17, 2019) (noting, in reversing ALJ's finding of no disability, that the claimant could complete some household tasks "albeit with limitations").

In short, Plaintiff's ability to "independently" function in the area of understanding, remembering, or applying information is "seriously limited." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)(d). Accordingly, Plaintiff has at least a marked limitation in this area.

### b.  Interacting with Others

The Court finds little to no evidence suggesting Plaintiff is limited in her interactions with others. "This area of mental functioning refers to the abilities to relate to and work with supervisors, co-workers, and the public." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(G).

Dr. Noia noted Plaintiff's "demeanor and responsiveness to questions was cooperative." R. at 703. And her "manner of relating, social skills, and overall presentation was moderately adequate." Id. Plaintiff also reportedly "gets along with friends and family." Id. at 705. Therefore, the Court concludes that Plaintiff is not significantly limited in her ability "to relate to and work with supervisors, co-workers, and the public." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(G).

c.  Concentrating, Persisting, or Maintaining Pace

The Court concludes that Plaintiff has, at minimum, a marked limitation in the area of concentrating, persisting, or maintaining pace. "This area of mental functioning refers to the abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(G). A claimant's ability to "complet[e] tasks in a timely manner" is relevant to this analysis. Id.

Plaintiff noted that she is unable to "get anything finished," R. at 137, suggesting she would not be able to "complet[e] tasks in a timely manner." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(G). She indicated she cannot finish tasks because she either "gets in pain or side tracked." R. at 140. She has trouble remembering things and gets "very confused and mixed up." R. at 141.

In this area, Plaintiff's ability to "effectively" function on a "sustained basis" is "seriously limited." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)(d). Accordingly, Plaintiff has at least a marked limitation in this area.

d.  Adapting or Managing Oneself

The Court concludes that Plaintiff has, at minimum, a marked limitation in the area of adapting or managing oneself. "This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting." See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(G).

Plaintiff testified in front of ALJ Koennecke that she gets "upset easy if things don't go the way they should, like if [she] can't get my shoes or socks on [she] get[s] real upset and start[s] crying." R. at 1181. Reactions such as this raise serious questions regarding Plaintiff's

"abilities to regulate emotions, control behavior, and maintain well-being in a work setting."

See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(G). Therefore, Plaintiff's functioning in

adapting or managing herself is at least markedly limited.

### 3. Onset Prior to Age 22

The Court easily concludes that Plaintiff was disabled before reaching 22 years of age.

Plaintiff reported to Dr. Noia that her intellectual difficulties started in "early childhood." See R.

at 703. She was in special education classes during her schooling and had "difficulty keeping up

academically with classmates because of learning problems." See R. at 702–03. Because the

Record indicates Plaintiff's disability began before she turned 22, the last prong of Listing

12.05(B) is also met.

In conclusion, having identified "persuasive proof of disability," McClain, 299 F. Supp.

2d at 324 (quoting Gold, 463 F.2d at 44), the Court finds that "remand for further evidentiary

proceedings would serve no purpose," id. Plaintiff has satisfied Listing 12.05(B)'s requirements,

establishing that she suffers from an intellectual disorder. The sole issue on remand shall be the

"calculation and payment of benefits." Id.

### V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Commissioner's decision denying Plaintiff's application for SSI

benefits is **REVERSED** and the case is **REMANDED** to the Commissioner of Social Security,

pursuant to 42 U.S.C. 405(g), for calculation and payment of benefits; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-

Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**[9]

DATED:     October 21, 2020
            Albany, New York

Lawrence E. Kahn
U.S. District Judge

---

[9]    Due to the delays and disruptions caused by the COVID-19 pandemic, some cases/motions were not disposed of prior to the end of the reporting period.